Jon D. Graves, Legal Counsel, SC #10554
Hutchinson Correctional Facility
P.O. Box 1568
Hutchinson, KS 67504-1568
Telephone: (620) 625-7253

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| **CALEB KANATZAR** ) | |
| ) | |
| **Plaintiff,** ) | |
| **v.** ) | |
| ) | **Case No. 22-3036-SAC** |
| **JEFF ZMUDA ET AL.,** ) | |
| ) | |
| **Defendants.** ) | |
| _____) | |

## REPORT IN "MARTINEZ v. AARON" INVESTIGATION
## CIVIL RIGHTS COMPLAINT

On March 31, 2022, an action was filed in the United States District Court for the District of Kansas by Plaintiff, Caleb Kanatzar, then an inmate incarcerated in the custody of the Secretary of Corrections of the State of Kansas, who was then confined at the Hutchinson Correctional Facility.  Plaintiff charged under 42 USC §1983 that defendants Secretary of Corrections, Jeff Zmuda, Warden Dan Schnurr, Facility Management Darcie Holthaus, Unit Team Manager Agnew, Unit Team Manager J. Jackson, Maintenance Supervisor Hullet, Unit Team Pettijohn and Infection Control Nurse Joyce Hicks were responsible for matters relating to breathing problems plaintiff developed after being housed in A Cellhouse.

All defendants are alleged to have been acting under color of state law in their official capacity and are sued in their individual and personal capacities. (Doc 9 pages 1, 2, 6 - 8)

Plaintiff indicates he has been housed in a single man cell in A cell house at the Hutchinson Correctional Facility for three years, that the cells have a solid front door and that the ventilation of his cell runs through the center way (pipechase), the center separation between two sets of cells, and that hazardous conditions exist in that center way that causes him to have respiratory issues. (Doc. 9, pp. 11-12, 13-15)

Warden Dan Schnurr investigated plaintiff's complaints with the aid of his staff, defendant maintenance supervisor Steve Hullet, indicated there were no health issues and that the ventilation provided fresh air. (Doc. 9, pp. 11, 16-17)

Plaintiff filed an emergency grievance which was sent to the Secretary of Corrections Zmuda.  The grievance was returned to the facility for investigation and was determined by the Secretary of Corrections' designee Darcie Holthaus to not be an emergency (Doc. 9 p.16)

The emergency grievance was investigated by Defendant Unit Manager Agnew and Unit Manager Jackson who plaintiff says took no action. (Doc. 9 p.16)

The Warden then sent plaintiff a letter indicating the warden had spoken with defendant maintenance supervisor Hullet who advised that plaintiff's beliefs were not factually correct. Hullet indicated the pipechase/ventilation system was not filled with dust, Mold, sewage leaks, animal feces and dead animals. Hullet also indicated that only fresh air is circulated into the cells and that the HVAC system works.  Plaintiff says these statements were all untrue.  The warden determined that no action was warranted. (Doc. 9 p.17)

On November 9, 2021, plaintiff also filed a regular grievance was investigated by defendant unit team member Jeffrey Pettijohn who found no action was warranted.   The warden

and the secretary of corrections agreed. (Doc. 9 p.16)

Plaintiff also sent a request to staff form to defendant infection control nurse Joyce Hicks raising the same issues. Hicks responded that plaintiff should inform the unit manager.  Hicks took no further action. (Doc.9 pp. 16-17)

Plaintiff also indicates he submitted health services requests on November 2, 2021, November 19, 2021 and on January 31, 2022.  Plaintiff has been diagnosed with Respiratory problems and received an Albuterol inhaler to use when he has asthma attacks. (Doc. 9 p. 17)

In his prayer for relief regarding his conditions of confinement claim, plaintiff seeks compensatory damages against each defendant in their individual capacity in the amount of $100,000.00 and punitive damages from each defendant in their individual capacity in the amount of $100,000.00.  Further, plaintiff wants to be moved to a different cellhouse with adequate ventilation and that the entire A Cellhouse closed until the ventilation system in the cellhouse is brought up to HVAC standards plaintiff deems adequate.  Plaintiff also seeks certification as a class action. (Doc. 9 pp. 18-19) page 5)

Plaintiff seeks a jury trial.

The Court screened the case and issued an order dismissing defendant Zmuda because he had no personal involvement with plaintiff's claims.  Plaintiff's request for injunctive relief was denied because plaintiff had been transferred to a different facility and the issues are moot as to him.  Plaintiff's request for class certification was denied.  Plaintiff's claim relating to conditions of confinement was allowed to proceed against the remaining defendants. (Doc. 11 pp. 5-9)

## UNCONTROVERTED STATEMENT OF FACTS

### A.    Plaintiff's Information

Plaintiff, Caleb Kanatzar, inmate number 67745, is a 42 year old inmate, legally

incarcerated in the custody of the Secretary of Corrections, State of Kansas and is currently serving sentence for his conviction of one count of Voluntary Manslaughter and one count of aggravated battery in two separate cases.    Plaintiff came into custody of the Department of Corrections on August 23, 2018, transferring to the Hutchinson Correctional Facility on September 26, 2018, and remained there until he was transferred to the El Dorado Correctional Facility on April 4, 2022.  Plaintiff's earliest possible  (Exhibit 1 Kasper Sheet)

Plaintiff was sent correspondence on June 16, 2022, from counsel preparing this report, asking plaintiff if he had anything further to add to his allegations.  Plaintiff has not responded. (Exhibit 2 correspondence)

### B.    Physical Structure of A Cellhouse

Plaintiff indicates he spent three years in A cellhouse at HCF.  The cellhouse is a collection of twenty five cells on each side of the center way and extends four cells high, with a concrete floor between the second and third tiers.  A1 Cellhouse is on the north side of the cellhouse and A2 is on the south side.  Odd numbered cells are on A2 side and even numbers on A1 side.  The numbers on the first level on both sides begin with 1 and on the second level they begin with 2.  The cells at the back end of A1 have three foot concrete porch built on and a solid door on the outside of the porch.  These are referred to as "Quiet Cells".  A3 cellhouse is comprised of the top two levels of the A Cellhouse with the same numbering system. (Exhibits 5, 18, 19)

Plaintiff's movement record for last 3 years, From May 19, 2019, to February 18, 2022, follows below,  with explanations of why he was in each cell.  At all times, plaintiff was confined in A cellhouse.

4

a.   A1-200 5/19/19-5/22/19 (prehearing detention)

b.   A3-211 6/19/19-12/25/19 (Other security risk)

c.   A1-140 12/25/19-12/30/19 (Other security risk)(quiet cell)

d.   A2-207 12/30/19-11/29/21 (removed from cell for medical treatment 7/28/21-8/3/21)

e.   A2-223 11/29/21-12/23/21 (Other security risk)

f.   A1-134 12/23/21-12/30/21 (Prehearing Detention)(quiet cell)

g.   A2-219 12/30/21-4/4/22 when transferred to EDCF (Other security risk except 2/14/22-2/18/22 when he was held in disciplinary segregation)

Except for twelve days in the quiet cells at the back of A1 cellhouse on the first level and slightly over six months on the second level of A3 cellhouse, plaintiff lived on the second level of A1 cellhouse the remainder of the time.

Plaintiff's movement record within the prison system supports plaintiff's statement for his time in A cellhouse at HCF.  (Exhibit  3)

Each of the cells plaintiff lived in had a solid door on the front of the cell with two five inch vent holes at the back of the cell, one toward the top the cell wall and the other at the bottom.  All of the doors had a square at the bottom with louvers, except for the quiet cells, which had a grilled window with a glass covering that could be propped open   (Exhibits  22, 23, 24)

**C.     Narrative regarding ventilation in A cellhouse**

Defendant Steve Hullet is the physical plant supervisor specialist at the Hutchinson

Correctional Facility.  Part of his job includes overseeing the operation and maintenance of the system that ventilates the cells in A cellhouse.

Defendant Hullet is familiar with the design and principles of the current ventilation system in A cellhouse.  Defendant Hullet indicates that the design of the system cannot permit the air in the center way to enter any of the cells in which plaintiff lived.  This is true because the system design is that fans at the top of A cellhouse have a series of large fans which draw the air in the center up to the ceiling and out through roof vents.  The pressure created by the fans forces outside air into the cells and pulls the air out of the cells through two five inch vent holes in each cell.  The fans cannot run backward and can only draw the air upward.

Defendant Hullet advises that A cellhouse is believed to be the oldest or next to oldest cellhouses at HCF, having been constructed in the late 1800s. The original design for ventilating the cells was through ducts which permitted air to be drawn out through a flue-like function made possible by large openings in the towers at the end of the facility.  At that time the cell fronts used bars rather than solid doors.

The current design for ventilation is that six large exhaust fans are located in the concrete ceiling at the top of A cellhouse, which is four tiers high.  Usually, five are working to draw air up and out through roof vents and one is kept in reserve.  They are constantly operated, managed, and overseen by the building control computer system. This system will notify defendant Hullet and his staff of any problems.  The fans can only pull air upward, the amount of air they are engineered to move is 30 cubic feet of air per minute through each cell.  The exact speed of the fans varies by the pressure in the center way.  For example, when a door on one end of the center way is opened the pressure drops and the fans will increase their Revolutions Per Minute to

accommodate that change.  The effect of this air movement is to draw air out of each cell and replace all the air in the cell three times each hour.  If an inmate chooses to block one or both of his vents, he can reduce the frequency of the air changing in his cell, but air will still be moving by the design of the system.

The center way is five feet wide, in between the two sets of cells and extends to a concrete ceiling approximately fifty feet up.  The fans are placed in six holes in the ceiling and pull air from the center way into the roof attic where it is vented outside.  Catwalks on each of four levels permit maintenance and security staff to make multiple entries into the center way each shift.  Security staff have to manually flush the toilets on specific cells from the center way every two hours.  During that time, they can observe any electrical or plumbing issues and are expected to submit a work order for facility maintenance to correct the problem.  Any dust or other contaminants would be constantly drawn straight up to the ceiling.  There is also a sub floor opening beneath the first floor of the catwalk.

Plaintiff spent a total of twelve days in two cells at the far end of A1 cellhouse which are regular sized cells, but have approximately a three foot block porch on them with a solid door. These are called quiet cells and are used when inmates are unusually noisy or represent a security risk to those walking by the cells.  These few cells have older doors without louvers, but still have a window in the door that can be opened to provide more air movement if needed. Even with the door and window closed, the same air change of three times per hour is achieved.

Defendant Hullet advises that while there are periodically going to be small water leaks, it is not raw sewage.  There is no bad odor in the center way.  He is not aware of a rodent problem and doesn't remember ever seeing a dead mouse.  There are no traps in the center ways of which he is aware.

Defendant Hullet concludes that nothing is necessary to fix or change regarding the air movement system to improve the quality of air in the inmate cells because it is changed every twenty minutes and because the air in plaintiff's cells was always fresh air and never came from the center way, which is not contaminated.  Any contaminants in the air in the center way would be drawn up into the fans and expelled through the vents.  It is not physically possible for contaminants to be pulled into the cells from the center way.  Plaintiff is mistaken in his theory to the contrary. (Exhibit 5-Hullet Affidavit)

Line drawings of A1, A2 and A3 cellhouses help to illustrate the layout of the cells. (Exhibits 18, 19)

A drawing from Defendant Hullet illustrates the design of air flow through the center way and out through the facility roof. (Exhibit 20)

A computer screen shot illustrates the overview of the six exhaust fans in the ceiling of A cellhouse. (Exhibit 21)

The doors of the cells in which plaintiff was confined were all solid and all have a louvered opening in the bottom of the door, except for the two quiet cells which have a window in the middle of the door which can be propped open.  See example photos of solid front doors with louver and with window. (Exhibits 22-24)

All the cells in which plaintiff was confined have two five inch vents at the back of the cell opening into the center way, one at the top and one at the bottom of the cell.  See example photos of vents in cells. (Exhibits 25-27)

The center way between the cells is documented from one end of the cellhouse, showing the nature of the walk way on the first of four levels, the electrical and plumbing hardware which is found through out all four levels of the center way and the floor and ceiling areas of the first

8

floor run.  See example photos of center way. (Exhibits28-30)

The roof vents and the tower vents are shown in example photos. (Exhibits 31-33)

Defendant Warden Dan Schnurr didn't provide plaintiff with any direct care and is not aware that plaintiff has any medical issues relating to the time he spent in A cellhouse. Defendant Schnurr spoke to defendant Hullet about the subject matter of plaintiff's complaints and was advised as is stated above.  Plaintiff could not have become ill due to air in the center way entering plaintiff's cell because it is not possible for center way air to enter plaintiff's cell. (Exhibits 4-5)

Defendant Schnurr did receive and respond to three grievances filed by plaintiff.

Defendant Schnurr received Grievance BA00018659 from plaintiff Kanatzar dated October 28, 2020, complaining that plaintiff was experiencing breathing problems because unfiltered air was coming into his cell resulting in him breathing mold and dust resulting in him having breathing problems.  Plaintiff complained that the air needed to be filtered.  Unit team investigated the grievance told plaintiff on October 30, 2020, that the ventilation system was working properly.  Plaintiff appealed that response to me and defendant Schnurr responded that the ventilation system was working properly.  Plaintiff did not appeal this response. (Exhibits 4, 13)

Defendant Schnurr received an unnumbered emergency grievance from Plaintiff dated November 8, 2021, which plaintiff originally sent to the Kansas Department of Corrections' central office in Topeka.  Defendant Darcie Holthaus, acting as the Secretary of Corrections' Designee found the grievance was not an emergency and returned it to HCF to be investigated. Defendant Joe Jackson received the grievance and sent it to defendant Allyson Agnew to investigate.  On January 27, 2022, Defendant Schnurr responded that the system was working as

designed and that only fresh air was going into his cell.  Plaintiff did not appeal this response. (Exhibits 4, 5, 7, 8, 10, 15)

Plaintiff filed another complaint November 9, 2021, about the same thing as in Grievance BA00018853.  Unit team defendant Jeffrey Pettijohn investigated the matter and responded on November 22, 2021, that the ventilation system for his cell was working properly.  Plaintiff appealed that conclusion to defendant Schnurr, who had defendant Unit Team Manager Allyson Agnew investigate the complaint again and defendant Schnurr affirmed that decision on November 30, 2021.  Plaintiff appealed that decision to the Secretary of Corrections, who's designee defendant Darcie Holthaus advised plaintiff on December 21, 2021, that the response was appropriate. (Exhibits 4, 6, 8, 10, 14)

Apparently plaintiff has sued defendants Schnurr, Agnew, Pettijohn, Jackson and Holthaus solely for their limited involvement in the grievance process and defendant Hullet because he is the person in charge of maintaining the electrical and plumbing in the center way.

Daniel Womack is the keeper of the record of grievances and property claims.  She indicates that three grievances were filed by plaintiff regarding the ventilation of his cell.  Those grievances are BA00018659, BA00018853 and an unnumbered emergency grievance sent directly to the Secretary of Corrections and then returned to HCF for investigation and response.  Plaintiff filed no property claims.  (Exhibit 9)

### D.    Medical Information

Plaintiff's medical record for the past three years is attached hereto (Exhibit 34)

Defendant Infection Control Nurse Joyce Hicks received her nursing degree in 1994 and indicates her duties as infections control nurse include administering immunizations, assisting with testing for infectious or contagious diseases and monitoring outbreaks of infections.  Nurse

10

Hicks has never had any role in or responsibility for the cleaning or maintenance of the ventilation system for HCF. (Exhibit 11)

On November 24, 2021, plaintiff sent a Form 9 communication to Nurse Hicks alleging that dusty, moldy, sewage exposed air was being blown into plaintiff's cell. Nurse Hicks' Health Services Administrator, Debra Lundry, responded by advising plaintiff to bring the issue up with his unit team so a maintenance order could be placed. (Exhibits 11, 12)

Health Services Administrator (HSA) Debra Lundry obtained her registered nursing degree in 1992, and offers the following information in response to plaintif Caleb Kanatzar's claims of health problems relating to the condition and cleaning of the ventilation system while incarcerated in A cellhouse of HCF.

Mr. Kanatzar is a 42-year-old male with a medical history that includes being a former smoker and a self-reported history of previous upper respiratory infections.

On November 20, 2021, Mr. Kanatzar was seen by Elisabeth Ostrom, LPN, and reported to Ms. Ostrom that he was experiencing breathing problems as a result of dirty, unfiltered air blowing into his cell. Mr. Kanatzar reported that his upper respiratory issues had begun on or around November 8, 2021. Mr. Kanatzar's lung sounds were clear and he was referred for an inhaler.

On November 22, 2021, Mr. Kanatzar was evaluated by nurse practitioner Nancy Ciskey. Auscultation of Mr. Kanatzar's lungs was normal and Mr. Kanatzar exhibited normal respiratory effort. Mr. Kanatzar reported that the cell vent blowing air at night resulted in inhaling dust or particles which caused difficulty breathing and bad taste in his mouth but denied wheezing, cough, and shortness of breath. Mr. Kanatzar was assessed as having reactive airway dysfunction syndrome. Mr. Kanatzar was prescribed an albuterol sulfate inhaler and directed to

use 1 puff every 4 to 6 hours as needed for breathing difficulty, to be discontinued on January 20, 2022.  Ms. Ciskey recommended that Mr. Kanatzar could cover vent if safe and approved by KDOC, use a mask to cover mouth, or rinse mouth if dust was inhaled.

As noted above, on November 24, 2021, Mr. Kanatzar submitted an Offender Request to Staff Member, addressed to Joyce Hicks, infection control nurse for HCF, alleging that "dusty, moldy, sewage exposed air" was being blown into his cell.  HSA Lundry responded to this Request and directed Mr. Kanatzar to bring the issue up with his unit team so that a maintenance order could be placed.

On February 1, 2022, Mr. Kanatzar was seen by Faye Vargas, RN, and requested that his inhaler be renewed.  Mr. Kanatzar complained that his symptoms were the result of a "dirty vent."  Mr. Kanatzar's subjective complaints consisted of nasal redness, congestion, drainage, shortness of breath, sore throat, and non-productive cough.  Upon examination, Mr. Kanatzar's lung sounds were clear.  Mr. Kanatzar was advised to gargle warm salt water as needed, to rest and increase oral fluid intake, and to contact medical if symptoms worsened or further developed.  Ms. Vargas referred Mr. Kanatzar to be seen by his practitioner.

On February 28, 2022, Mr. Kanatzar was again seen by nurse practitioner Nancy Ciskey.  Ms. Ciskey noted that Mr. Kanatzar did not exhibit shortness of breath, cough, hemoptysis (coughing up blood), or cyanosis (blue discoloration of skin as a result of inadequate oxygenation or circulation).  Auscultation of Mr. Kanatzar's lungs was normal and Mr. Kanatzar exhibited normal respiratory effort.  Spirometry and a chest x-ray were ordered.  An albuterol sulfate inhaler was again prescribed with directions to inhale 1 puff every 4 to 6 hours as needed for shortness of breath.

A spirometry test was performed on March 1, 2022, to evaluate Mr. Kanatzar's pulmonary function.  Mr. Kanatzar's exhibited normal spirometry.

A chest x-ray was performed on March 28, 2022.  The radiologist, Dr. Lloyd Wagner, found no infiltrates or masses in Mr. Kanatzar's imaging.

On March 28, 2022, Mr. Kanatzar was again seen by nurse practitioner Nancy Ciskey. Mr. Kanatzar reiterated his complaint that dust came into his cell at night through the vent which caused him difficulty in catching his breath.  Mr. Kanatzar further reported that usage of the albuterol sulfate inhaler resolved his symptoms.  Mr. Kanatzar informed Ms. Ciskey that he had contacted KDOC and the unit team and that they were working on moving him. (Exhibit 12)

### E.      Policies

Plaintiff is required to file a personal injury claim within ten calendar days of the date when the injury is alleged to have occurred whether or not he has filed a grievance.

The Kansas Administrative Regulation 44-16-104a is set out in the inmate rule book every inmate receives upon being processed into the correctional system.  (Exhibit 16)

Internal Management Policy and Procedure 01-118D contains the form for inmates to use to make a claim for personal injury and explains the appeals process which would permit the exhaustion of this administrative remedy.  (Exhibit17)

### <u>CONCLUSION</u>

Plaintiff's 8th constitutional amendment claim of deliberate indifference by all defendants is based on the assumptions that the air in the center way of the cellhouse he lived in for three years was contaminated with mold, dust, sewage and dead rodents, that the air from the center way came into his cell through the two five inch vents in the back of his cell and that as a result of that contaminated air in his cell plaintiff developed a respiratory condition.  All the defendants

were liable to him because they didn't do something to change the ventilation system.

The design of the ventilation system in A cellhouse draws air into the center way from the cells and changes the air three times an hour.  It is impossible for air in the center way to migrate into plaintiff's cell.

The air in the center way is pulled out of the cells and up through the roof where it is vented outside.  None of the contaminants complained of by plaintiff were evident in the center way and would have been drawn to the room and vented out if any contaminants did exist.

If plaintiff's theory of contaminated air in his cell was proven, his medical condition doesn't support any finding that he has any lung condition relating to the air in his cell or that such air even came from the center way of A cellhouse.

The liability of defendants Schnurr, Jackson, Pettijohn, Agnew and Holthaus are premised on either conducting investigations or responding to grievances. There were no other actions that any of these defendants need to take or could have taken.

Defendant Hullet was responsible for operating and maintaining the ventilation system

Defendant Schnurr doesn't have anything to do with the day to day operations of this segregation unit and plaintiff has provided no factual allegation to sustain any claim against Warden Schnurr.

Defendant Hicks is the infection control nurse and has nothing to do with any aspect of the design, function or maintenance of the ventilation system in A cell house.  Her ultimate supervisor, Debra Lundry, gave plaintiff, on behalf of defendant Hicks, the only advice possible, which was to notify his unit team so they could turn in a maintenance order, if actually required

by the circumstances, which it was not.

Lastly, it doesn't appear plaintiff has exhausted his administrative remedies by filing a property claim and appealing the denial to the Secretary of Corrections, if such was the case.

There appears to be no intentional or deliberately indifferent acts committed by any of the defendants and nothing alleged rises to the level of a constitutional violation even if the allegations were factually possible, which they are not.

Respectfully submitted,

_/s/ Jon D. Graves_____
Jon D. Graves #10554

## CERTIFICATE OF SERVICE

I hereby certify that on August 17, 2022, I electronically filed the foregoing with the clerk of the court by using the CM/ECF system which will send a notice of electronic filing to the following:  Matt Shoger, Assistant Attorney General, 301 SW 10th Avenue, Kansas Judicial Center, 2nd Floor, Topeka, KS 66612-1597.  I further certify that I mailed the foregoing document and the notice of electronic filing by first-class mail to the following non-CM/ECF participants:

Caleb Kanatzar #33728
El Dorado Correctional Facility
P.O. Box 311
El Dorado, KS 67042

And

Sam Bennett
Norris Keplinger Hicks & Welder, LLC
11551 Ash Street, Suite 200
Leawood, KS 66211

__/s/ Jon D. Graves_____
Jon D. Graves

## EXHIBIT LIST

1. Inmate Data Summary for Caleb Kanatzar KDOC #67745
2. Correspondence to plaintiff dated June 16, 2022 inviting him to provide any additional statement for inclusion in this report.
3. Plaintiff's movement record during his incarceration in KDOC
4. Affidavit of Dan Schnurr
5. Affidavit of Steven Hullet
6. Affidavit of Jeffrey Pettijohn
7. Affidavit of Joe Jackson
8. Affidavit of Allyson Agnew
9. Affidavit of Daniel Womack
10. Affidavit of Darcie Holthaus
11. Affidavit of Joyce Hicks
12. Affidavit of Debra Lundry
13. Grievance BA00018659
14. Grievance BA00018853
15. Unnumbered Emergency Grievance responded to by Defendant Schnurr January 27, 2022
16. Kansas Administrative Regulation 44-16-104a
17. Internal Management Policy and Procedures 20-101A
18. Line drawing of A1/A2 Cellhouse
19. Line drawing of A3 Cellhouse
20. Drawing of center way explaining airflow through it to the roof
21. Computer Screen shot of control of six fans on top of A cellhouse
22. Photograph of Solid Front Door with Louver
23. Photograph of Close up of Louver
24. Photograph of Solid Front Door with Window and Grate
25. Photograph of Upper vent in cell
26. Photograph of Lower vent in cell
27. Photograph of larger view of vents in cell
28. Photograph of Center way
29. Photograph of left side of Center Way walk way
30. Photograph of right side of Center Way walk way
31. Photograph of Roof vents
32. Photograph of vents in tower
33. Photograph of A Cellhouse at a distance
34. Medical and Mental Health Record of Plaintiff for Relevant Time Frame (Filed under Seal and Conventionally)(plaintiff will be provided with a hard copy of the records) (Passwords included on separate sheets)

I, Jon D. Graves, certify that the attached are true and correct copies of records kept in the normal course of business by the Kansas Department of Corrections and the published Kansas Statutes Annotated, Kansas Administrative Regulations, Kansas Department of Corrections

Internal Management Policy and Procedures, and Hutchinson Correctional Facility General Orders

/s/ Jon D. Graves_____                                      August 17, 2022___
Jon D. Graves                                                              Date

      Subscribed and sworn to before me this 17th day of August, 2022.

My Commission Expires:  11-18-2022

                         ___/s/ Rhonda K. Severin_____
                                 Notary Public