1

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

Caleb Kanatzar #67745
     Plaintiff

v.                                    Case No. 22-3036-SAC

Jeff Zmuda, et Al.              Jury Trial Demanded
     Defendants


PLAINTIFF'S MEMORANDUM DISPUTING
MATERIAL ISSUES ASSERTED IN
DEFENDANT'S "REPORT IN "MARTINEZ
v. AARON" INVESTIGATION


Comes Now, Plaintiff Caleb Kanatzar, Pro
Se, and Files this Memorandum Disputing
Material Issues Asserted in Defendants
"Report in "Martinez v. Aaron" Investigation
Civil Rights Complaint" Filed on 8-17-22.
     Plaintiff Additionally Files the written
Declarations of Inmates: Cory Addis, Mario Jimenez,
Eric Trotter, Laron Kelly, Ruben Higadera, James
Thurman, Patric Patterson, David Minish, and
Charley Hughes, and Charles Denmark, All of
whom were Confined in the Cells of A-Cellhouse
in H.C.F. And All of whom Declare under Penalty
of Perjury that Filthy Stinky Air is Blown

2

Directly into the Cells of A-CellHouse from the PipeChase/Center Way and Nearly All of whom Attest to the Problem of the Rodent Infestation and Rodent Feces in A-CellHouse. These Declarations Directly Dispute Defendant's Assertions That The Vents in the A-CellHouse Never Blow Air into the Cells From the PipeChase/Center Way and Also Directly Dispute Defendants Assertions That the PipeChase/Center Way Does Not Contain Mold, Dust, Sewage, Mice, Dead Mice, and Animal Feces. (Declarations Attached as Exhibits A-J)

In This Memorandum Plaintiff Also Takes Opportunity to Respectfully Renew His Motion For Appointment of Counsel and Prays This Court Will Appoint An Attorney to Represent Plaintiff in This Case.

Finally, Attached as Exhibit K Plaintiff Has Attached a Centurion Medical Assessment/ Plan Filed at H.C.F. on 11-22-21 Showing That Plaintiff Was Diagnosed As Having "Reactive Airway Dysfunction Syndrome" Related to Plaintiff's Cell's Vent Blowing Contaminated Air and That Plaintiff Was Prescribed An Albuterol Inhaler For The Illness.

3

PLAINTIFF DISPUTES THE FOLLOWING
MATERIAL ISSUES ASSERTED IN DEFENDANT'S
"REPORT IN 'MARTINEZ V. AARON' INVESTIGATION"

1. PAGE 5, LINE 17 STATES "ALL OF THE DOORS
HAD A SQUARE AT THE BOTTOM WITH LOUVERS,
EXCEPT FOR THE QUIET CELLS, WHICH HAD A GRILLED
WINDOW WITH A GLASS COVERING THAT COULD BE
PROPPED OPEN ( EXHIBITS 22, 23, 24)"
WHILE IT IS POSSIBLE THAT THE GLASS WINDOW
COVERINGS ON THE QUIET CELL DOORS "COULD BE
PROPPED OPEN" AS SHOWN IN EXHIBIT 24
THE FACT OF THE MATTER IS THAT THE WINDOW
COVERING WAS NOT PROPPED OPEN WHILE
PLAINTIFF WAS IN A QUIET CELL AND IN THE
3 YEARS PLAINTIFF WAS HELD IN A-CELLHOUSE
PLAINTIFF NEVER SAW THE QUIET CELL WINDOW
COVERINGS PROPPED OPEN IN THE WAY SHOWN
IN DEFENDANT'S EXHIBIT 24.

2. PAGE 6, LINE 4 STATES, "DEFENDANT
HULET INDICATES THAT THE DESIGN OF THE SYSTEM
CANNOT PERMIT THE AIR IN THE CENTER WAY TO
ENTER ANY OF THE CELLS IN WHICH PLAINTIFF
LIVED. THIS IS TRUE BECAUSE THE SYSTEM DESIGN
IS THAT FANS AT THE TOP OF A-CELLHOUSE HAVE A
SERIES OF LARGE FANS WHICH DRAW THE AIR

4

up to the Ceiling and out through Roof vents. The pressure created by the fans forces outside air into the Cells and pulls the air out of the Cells through two five inch vent holes in each Cell."

Defendant Hullet's statement that "the design of the system cannot permit the air in the Center way to enter any of the Cells in which Plaintiff lived" is False; air from the Center way would blow through the vent holes into Plaintiff's Cell EVERY NIGHT.

3. Page 7, line 9 states "security staff have to manually flush the toilets on specific Cells from the Center way every two hours."

These same security staff set and remove the Mouse traps in the Center way and do see the Mice and Animal feces and have stated as such to Plaintiff. For this reason, and because Plaintiff has Personally witnessed security staff remove Mouse traps containing Dead Mice, Plaintiff seeks depositions from all security staff working in A-Cellhouse at the time of Plaintiff's

5

Confinement therein.

4. Page 7, line 21 states "There is no bad odor in the center way."
This is false. The air that blew into Plaintiff's cell from the center way on a nightly basis would stink every time without exception.

5. Page 7, line 20 states "...while there are periodically going to be small water leaks, it is not raw sewage."
This is false. Raw sewage would leak in the center way on a regular basis and the smell of feces would come into the cell through the vents from the center way. Plaintiff seeks depositions from the H.C.F. inmate plumbing crew who would be called to repair the faulty pipes in the center way.

6. Page 7, line 21 states "(Hullet) is not aware of a rodent problem and doesn't remember ever seeing a dead mouse. There are no traps in the center ways of which he is aware."

6

THIS STATEMENT IS CLEARLY MEANT TO IMPLY
THERE IS NOT A RODENT PROBLEM IN A-CELLHOUSE
AND THAT THERE ARE NO TRAPS IN THE CENTER
WAY WHILE OBFUSCATING THE FACT THAT THERE
IS A RODENT PROBLEM AND THERE ARE MOUSE
TRAPS IN THE CENTER WAY (AS WELL AS IN
THE UNIT TEAM OFFICES AND THE NURSE'S
STATION.)

GIVING A DEFINITIVE ANSWER AS TO
WHETHER THERE ARE MOUSE TRAPS BEING SET IN
THE CENTER WAY BY STAFF WOULD EASILY BE
ACCOMPLISHED BY SAYING "NO" IF IT WERE NOT
HAPPENING.

THE FACT IS THERE ARE MICE, DEAD MICE, AND
MOUSE FECES IN THE CENTER WAY.

7. PAGE 8, line 4 STATES "ANY CONTAMINANTS
IN THE AIR IN THE CENTER WAY WOULD BE
DRAWN UP INTO THE FANS AND EXPELLED THROUGH
THE VENTS. IT IS NOT PHYSICALLY POSSIBLE FOR
CONTAMINANTS TO BE PULLED INTO THE CELLS FROM
THE CENTER WAY. PLAINTIFF IS MISTAKEN IN HIS
THEORY TO THE CONTRARY."

THIS IS FALSE. IT IS PHYSICALLY POSSIBLE
FOR CONTAMINANTS TO BE PULLED INTO THE CELLS
AND THE VENTS TO BLOW FILTHY AIR INTO THE

7

Cells From The Center Way Every Night.

8. Page 8, line 3 States: "The Air in Plaintiff's Cells was Always Fresh Air and Never Came From The Center Way, which is Not Contaminated."

This is False. The Air in Plaintiff's Cells was Not Always Fresh Air, The Air Did Blow in From The Center Way, and The Center Way is Contaminated with Dust, Mold, Sewage, Mice, and Animal Feces.

9. Page 8, line 18 Refers to Exhibits 25-27 in which Defendant Claims to Show The The Type of Cell in which Plaintiff was Confined.

This is False. Exhibit 25 and Exhibit 27 Show Cells with Vents in a Different Placement Than in The Cells Plaintiff was Confined. These are Not Cells From The Range on which Plaintiff was Confined.

10. Page 9, line 3 States "(Defendant (Schnurr)... is Not Aware That Plaintiff Has Any Medical Issues Relating to The Time

<u>8</u>

SPENT IN A CellHouse."

THIS IS FALSE. DEFENDANT SCHNURR WAS AWARE THAT PLAINTIFF WAS EXPERIENCING RESPIRATORY PROBLEMS CAUSED BY THE INADEQUATE VENTILATION IN A CellHouse BECAUSE, AS STATED ON PAGE 9, LINE 10, "DEFENDANT SCHNURR RECEIVED GRIEVANCE BA0001865 9 FROM PLAINTIFF... COMPLAINING THAT PLAINTIFF WAS EXPERIENCING BREATHING PROBLEMS BECAUSE UNFILTERED AIR WAS COMING INTO HIS Cell RESULTING IN HIM BREATHING MOLD DUST..." OVERALL DEFENDANT SCHNURR RECEIVED 3 GRIEVANCES FROM PLAINTIFF INFORMING DEFENDANT SCHNURR THAT PLAINTIFF WAS EXPERIENCING RESPIRATORY PROBLEMS CAUSED BY THE FILTHY CENTER WAY AIR BLOWING INTO PLAINTIFF'S Cell; DEFENDANT SCHNURR WAS WELL AWARE THAT PLAINTIFF HAS MEDICAL ISSUES RELATING TO THE TIME SPENT IN A-CellHouse.

11. PAGE 9, LINE 6 STATES: "PLAINTIFF COULD NOT HAVE BECOME ILL DUE TO AIR IN THE CENTER WAY ENTERING PLAINTIFF'S Cell BECAUSE IT IS NOT POSSIBLE FOR CENTER WAY AIR TO ENTER PLAINTIFF'S Cell."

THIS IS FALSE. IT IS POSSIBLE FOR CENTER WAY AIR TO ENTER PLAINTIFF'S CellS, CENTER

Way Air did Blow into Plaintiff's Cell every
Night, and Plaintiff did experience Respiratory
Illness because of the Filthy Contaminated
Center Way Air Being Blown into His Cell.

12. Page 10, line 11 States: "Apparently
Plaintiff has sued Defendants Schnurr, Agnew,
Pettijohn, Jackson, and Holthaus solely for
their limited involvement in the Grievance
Process and Defendant Hullet because He is
the Person in Charge of Maintaining the
Electrical and Plumbing in the Center Way."
This is False. Plaintiff has sued
Defendants Schnurr, Agnew, Pettijohn,
Jackson, and Holthaus because each of these
Defendants was informed, directly and
through the Administrative Remedy Process,
that Plaintiff was experiencing Respiratory
Illness (in the Form of Nightly Asthma
Attacks) caused by the Filthy Center Way
Air Being Blown into Plaintiff's Cell. Each
Defendant Failed to Properly investigate
Plaintiff's Grievance because a Proper
investigation would Have Revealed that the
Center Way is Filthy with Mold, Dust, Feces,
and Mice (Both Dead and Alive); Air does

Blow into the Cells From the Center way; And
Plaintiff Did Become ill From Being Forced
to Breathe the Filthy Center way air.

Plaintiff Sued Defendant Hullet Because in
addition to Being "the Person in Charge of
Maintaining the Electrical and Plumbing in the
Center way" Defendant Hullet was also
Responsible For Providing Adequate Ventilation
to Plaintiff. Even After Being informed that
Plaintiff was Experiencing Respiratory illness
Caused By Filthy Center way air Blowing into
Plaintiff's Cell Defendant Hullet Failed to
Correct or Properly investigate the Faulty
Ventilation that was his Responsibility and then
Made Statements that the Center way air
Cannot Blow into the Cells" that are
Demonstrably False and that Resulted in
Plaintiff's Continued Exposure to the Filthy
Center way air.

Additionally, Defendant Agnew is the
Specific HCF Staff Member who orders
that the Mouse Traps Be Set in A-Cellhouse
and on Multiple occasions Plaintiff Has
witnessed Defendant Agnew order Security
Staff (Officers Sloan, Strange, Hoffman,
Vargas) to Remove Mouse Traps Containing

Dead Mice From Both The Center Way and Defendant Agnew's Office. Defendant Agnew is Well Aware of How Filthy The Center Way is and Refuses to Properly Investigate Plaintiff's Complaints That The Filthy Air Was Blowing Into Plaintiff's Cell and Causing Respiratory Illness.

Plaintiff is Suing Each of These Defendants Because Each Defendant Was Informed That Plaintiff Was Experiencing Respiratory Illness Caused By The Prolonged Exposure To The Filthy Center Way Air Being Blown Into Plaintiff's Cell and Each Defendant Remained Deliberately Indifferent To Plaintiff's Suffering.

13. Page 10, Line 18 States: "Plaintiff Filed No Property Claims."

This is False. Plaintiff Did Filed A Personal Injury Claim Relating to Plaintiff's Respiratory Illness, Submitted To Defendant Pettijohn. While Awaiting A Response And Receipt From Defendant Pettijohn, Pettijohn Resigned His Position As Unit Team and Moved To Another Position Within The Prison. Several Staff Members Temporarily Filled In

12

FOR PETTIJOHN'S FORMER POSITION AS A-CELLHOUSE UNIT TEAM (NONE OF WHOM COULD INFORM PLAINTIFF OF THE INJURY CLAIM'S STATUS). EVENTUALLY DEFENDANT PETTIJOHN'S FORMER UNIT TEAM POSITION WAS FILLED BY UNIT TEAM KLUNE. UNIT TEAM KLUNE INFORMED PLAINTIFF THAT HE COULD NOT FIND THE PERSONAL INJURY CLAIM AND THAT SEVERAL PROPERTY CLAIMS AND PERSONAL INJURY CLAIMS THAT WERE SUBMITTED TO PETTIJOHN WERE LOST. PLAINTIFF THEN MAILED A PERSONAL INJURY CLAIM TO THE SECRETARY OF CORRECTIONS EXPLAINING WHAT HAD HAPPENED. PLAINTIFF NEVER RECEIVED A RESPONSE FROM THE SECRETARY OF CORRECTIONS. THE AMOUNT OF THE CLAIM WAS $100,000$.

14. PAGE 14, LINE 1 STATES "(PLAINTIFF CLAIMS DEFENDANTS WERE DELIBERATELY INDIFFERENT BECAUSE) THEY DIDN'T DO SOMETHING TO CHANGE THE VENTILATION SYSTEM."

THIS IS FALSE. PLAINTIFF CLAIMS DEFENDANTS WERE DELIBERATELY INDIFFERENT BECAUSE THEY REFUSED TO TAKE ANY ACTION AT ALL; DEFENDANTS COULD JUST AS EASILY MOVED PLAINTIFF TO A CELL WITH ADEQUATE VENTILATION AND/OR PROPERLY INVESTIGATE PLAINTIFF'S COMPLAINT THAT THE VENTS

Were Blowing Filthy Center Way Air into Plaintiff's Cell. Defendant's instead Chose to Do Nothing and left Plaintiff to Have Continued Nightly Asthma Attacks.

15. Page 14, line 3, States "It is impossible For Air in the Center Way to Migrate into Plaintiff's Cell."

This is False. The Air in the Center Way would Blow into Plaintiff's Cell every Night.

16. Page 14, line 5, States: "The Air in the Center Way is Pulled out of the Cells..."

This is False. Every Night the Air in the Center Way Blows into the Cells.

17. Page 14, line 6 States: "None of the Contaminants Complained of By Plaintiff were Evident in the Center Way and would Have Been Drawn to the Room and Vented out if any Contaminants Did Exist."

This is Partly False. The Contaminants Complained of By Plaintiff are Evident in the Center Way. However, Defendant's Assertion that the Contaminants "would Have Been

DRAWN TO THE ROOM" IS ACCURATE IF THE ROOM
REFERRED TO IS PLAINTIFF'S CELL.

18. PAGE 14, LINE 8 STATES: "IF PLAINTIFF'S
THEORY OF CONTAMINATED AIR IN HIS CELL WAS
PROVEN, HIS MEDICAL CONDITION DOESN'T SUPPORT
ANY FINDING THAT HE HAS ANY LUNG CONDITION
RELATING TO THE AIR IN HIS CELL OR THAT SUCH AIR
EVEN CAME FROM THE CENTER WAY OF
A-CELLHOUSE."

THIS IS FALSE. PLAINTIFF'S MEDICAL CONDITION,
DIAGNOSED AS REACTIVE AIRWAY DYSFUNCTION
WAS INDISPUTABLY RELATED TO THE AIR BLOWN
INTO PLAINTIFF'S CELL FROM THE CENTER WAY
AS DEMONSTRATED BY THE FACT THAT PLAINTIFF'S
ASTHMA ATTACKS WOULD OCCUR AT THOSE TIMES
WHEN THE VENTS BLOW AIR INTO PLAINTIFF'S
CELL FROM THE CENTER WAY. PLAINTIFF WAS
DIAGNOSED AS HAVING REACTIVE AIRWAY
DYSFUNCTION SYNDROME AND PRESCRIBED
A REACTIVE AIRWAY ALBUTEROL INHALER, i.e.,
PLAINTIFF'S MEDICAL CONDITION DOES SUPPORT A
FINDING THAT HE HAS A RESPIRATORY CONDITION
RELATING TO THE AIR IN HIS CELL.

19. PAGE 14, LINE 11 STATES "THE LIABILITY OF

DEFENDANTS SCHNURR, JACKSON, PETTIJOHN, AGNEW, AND HOLTHAUS ARE PREMISED ON EITHER CONDUCTING INVESTIGATIONS OR RESPONDING TO GRIEVANCES. THERE WERE NO OTHER ACTIONS THAT ANY OF THESE DEFENDANTS NEED TO TAKE OR COULD HAVE TAKEN."

THIS IS FALSE. DEFENDANTS SCHNURR, PETTIJOHN, AND AGNEW'S LIABILITY IS PREMISED ON THEIR FAILURE TO PROPERLY INVESTIGATE PLAINTIFF'S COMPLAINTS THAT THE VENTS WERE BLOWING FILTHY CENTER WAY AIR INTO PLAINTIFF'S CELL AND CAUSING RESPIRATORY ILLNESS. THESE DEFENDANTS WERE INFORMED OF PLAINTIFF'S MEDICAL CONDITION, ITS CAUSE, AND THAT PLAINTIFF WAS SUFFERING NIGHTLY ASTHMA ATTACKS AND THESE DEFENDANTS POSSESSED THE AUTHORITY TO MOVE PLAINTIFF TO A CELL WITH ADEQUATE VENTILATION AND WERE DELIBERATELY INDIFFERENT TO PLAINTIFF'S SUFFERING BY CHOOSING TO TAKE NO ACTION.

DEFENDANTS JACKSON AND HOLTHAUS' LIABILITY IS PREMISED OF THE FACT THEY WERE DELEGATED THE TASK OF INVESTIGATING AND CORRECTING THE FAULTY VENTILATION AND FAILED TO DO SO, RESULTING IN PLAINTIFF'S CONTINUED EXPOSURE TO AND SUFFERING FROM THE FILTHY

16

Air Blown into His Cell.

20. Page 14, line 14 States: "Defendant
Hullet was Responsible For Operating and
Maintaining the Ventilation System."

This is Correct. Defendant Hullet was
immediately Responsible For Operating and
Maintaining the A-Cellhouse Ventilation System and
Failed to Provide Adequate Ventilation to
Plaintiff's Cell Even After Being Advised
on Multiple Occasions That the Vents in
Plaintiffs' Cell Were Blowing Filthy Unfiltered
Air into Plaintiff's Cell Every Night and
Causing Respiratory Illness.

21. Page 14, line 15 States "Defendant
Schnurr Doesn't Have anything to Do with the
Day to Day Operations of this Segregation Unit
and Plaintiff Has Provided No Factual
Allegation to Sustain any Claim Against Warden
Schnurr."

This is False. Defendant Schnurr is involved
with the Day to Day Operations of A-Cellhouse
When He Has Been Notified That the Living
Conditions in A-Cellhouse are Causing Illnesses in
The Inmates, as was The Case Here. Defendant

17

SCHNURR WAS NOTIFIED BY PLAINTIFF ON MULTIPLE OCCASIONS THAT PLAINTIFF WAS DEVELOPING RESPIRATORY ILLNESS CAUSED BY FILTHY AIR BEING BLOWN INTO PLAINTIFF'S Cell; PLAINTIFF'S GRIEVANCE No. BA00018853 SPECIFICALLY STATED "THE long-TERM EXPOSURE TO THE COMPLAINED OF UNFILTERED AIR HAS CAUSED ME TO HAVE LUNG DAMAGE TO THE DEGREE THAT I NOW REQUIRE AN ALBUTEROL SULFATE INHALER (TO BREATHE) AND MY CONDITION CONTINUES TO DETERIORATE. I HAD NO RESPIRATORY PROBLEMS BEFORE BEING EXPOSED TO THE UNFILTERED CONTAMINATED AIR." IN THIS GRIEVANCE PLAINTIFF REQUESTED TO BE MOVED "TO A Cell THAT HAS A PROPERLY FILTERED VENTILATION SYSTEM." DEFENDANT SCHNURR POSSESSED THE AUTHORITY TO MOVE PLAINTIFF TO A Cell WITH ADEQUATE VENTILATION AND CHOSE INSTEAD TO DO NOTHING, DISPLAYING DELIBERATE INDIFFERENCE TO PLAINTIFF'S DECLINING HEALTH AND PUTTING PLAINTIFF AT SERIOUS RISK OF FURTHER HARM.

22. PAGE 14, LINE 18 STATES "DEFENDANT HICKS IS THE INFECTION CONTROL NURSE AND HAS NOTHING TO DO WITH ANY ASPECT OF THE DESIGN, FUNCTION OR MAINTENANCE OF THE VENTILATION SYSTEM IN A-CellHouse."
THIS IS FALSE. AS "INFECTION CONTROL NURSE"


DEFENDANT HICKS (ONCE NOTIFIED BY PLAINTIFF THAT THE A-CELLHOUSE VENTILATION WAS CAUSING ILLNESS) WAS REQUIRED TO INVESTIGATE THE ASPECT OF THE DESIGN AND FUNCTION OF THE VENTILATION SYSTEM THAT WAS CAUSING PLAINTIFF'S ILLNESS. INSTEAD, DEFENDANT HICKS REMAINED DELIBERATELY INDIFFERENT TO PLAINTIFF'S SUFFERING AND CHOSE TO DO NOTHING.

23. PAGE 15, LINE 1 STATES "(A MAINTENANCE ORDER) WAS NOT (REQUIRED BY THE CIRCUMSTANCES)."
      THIS IS FALSE. BECAUSE DEFENDANTS REFUSED TO MOVE PLAINTIFF TO A CELL WITH ADEQUATE VENTILATION A MAINTENANCE ORDER TO STOP THE FILTHY AIR BLOWING INTO PLAINTIFF'S CELL WAS REQUIRED.

24. PAGE 15, LINE 2 STATES "IT DOESN'T APPEAR PLAINTIFF HAS EXHAUSTED HIS ADMINISTRATIVE REMEDIES BY FILING A PROPERTY CLAIM AND APPEALING THE DENIAL TO THE SECRETARY OF CORRECTIONS"
      THE ONLY REASON IT APPEARS THAT PLAINTIFF DID NOT FILE A PROPERTY CLAIM IS BECAUSE BOTH PROPERTY/PERSONAL INJURY CLAIMS FILED BY PLAINTIFF REGARDING THIS ISSUE "CONVENIENTLY" WENT "MISSING" AFTER BEING SUBMITTED.

25. PAGE 15, LINE 4 STATES: "THERE APPEARS TO BE

No INTENTIONAL OR DELIBERATELY INDIFFERENT ACTS COMMITTED BY ANY OF THE DEFENDANTS AND NOTHING ALLEGED RISES TO THE LEVEL OF A CONSTITUTIONAL VIOLATION EVEN IF THE ALLEGATIONS WERE FACTUALLY POSSIBLE, WHICH THEY ARE NOT."

THIS IS FALSE. PLAINTIFFS ALLEGATIONS ARE TRUE AND FACTUALLY POSSIBLE; THE CENTER WAY IS FILTHY WITH DUST, MOLD, FECES, ETC.; AIR WOULD BLOW INTO PLAINTIFFS CELL FROM THE CENTER WAY; PROLONGED EXPOSURE TO THE CONTAMINATED AIR CAUSED PLAINTIFF TO DEVELOP RESPIRATORY ILLNESS, I.E. REACTIVE AIRWAY DYSFUNCTION REQUIRING USE OF AN ALBUTEROL INHALER TO BREATHE. PLAINTIFF NOTIFIED DEFENDANTS THAT THE FILTHY CENTER WAY AIR WAS CAUSING PLAINTIFF RESPIRATORY ILLNESS AND DEFENDANTS DISPLAYED DELIBERATE INDIFFERENCE TO PLAINTIFFS DECLINING HEALTH AND SUFFERING BY CHOOSING TO TAKE NO ACTION. DEFENDANT AGNEW IS ESPECIALLY LIABLE BECAUSE SHE WAS IN A CELLHOUSE EVERY DAY, PLAINTIFF PERSONALLY SPOKE WITH AGNEW ABOUT PLAINTIFFS NIGHTLY ASTHMA ATTACKS BEING CAUSED BY THE FILTHY CENTER WAY AIR BLOWING INTO PLAINTIFFS CELL, AND DEFENDANT AGNEW HAD FIRST HAND KNOWLEDGE OF THE RODENT INFESTATION (AND RODENT FECES) IN A-CELLHOUSE AND YET REFUSED TO MOVE PLAINTIFF TO A PROPERLY VENTILATED CELL.

20

Additionally, a Centurion Medical Assessment/
Plan Filed By Nancy Ciskey, APRN, on
11-22-21 Shows That Medical Staff Emailed
Defendant Agnew information That Plaintiff
Was Experiencing Respiratory illness
Caused By The Filthy air Blowing into
Plaintiff's Cell From The Center Way. (See
Exhibit K, page 3/3)


VERIFICATION


I Have Read The Foregoing Memorandum
Disputing Material Issues Asserted in
Defendant's "Report in Martinez v. Aaron"
investigation And Hereby Verify That The
Matters Alleged Therein Are True, Except
As To Matters Alleged on information And
Belief, And, As To Those, I Believe Them
To Be True. I Certify Under Penalty
of Perjury That The Foregoing is True
And Correct.

      Executed at El Dorado Correctional
Facility on 8-22-22.

                    Caleb Kanatzar #67745
                    Caleb Kanatzar