IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

CALEB KANATZAR,

           Plaintiff,

v.                               CASE NO. 22-3036-SAC

JEFF ZMUDA, et al.,

           Defendants.

**MEMORANDUM AND ORDER**

Plaintiff proceeds *pro se* and *in forma pauperis* in this civil rights case. At the time of filing, Plaintiff was incarcerated at Hutchinson Correctional Facility in Hutchinson, Kansas ("HCF"). Plaintiff is currently incarcerated at El Dorado Correctional Facility in El Dorado, Kansas. On April 21, 2022, the Court screened Plaintiff's Amended Complaint (Doc. 9) and ordered the officials responsible for the operation of HCF to prepare a *Martinez* Report. (Doc. 11; the "Report"). The Report has now been filed. (Doc. 20). Plaintiff has also filed a Response to the Report. (Doc. 22). This matter is before the Court on Plaintiff's Response and for screening Plaintiff's Amended Complaint in light of the Report. The Court's screening standards and the underlying facts are set forth in detail in the Court's April 22, 2022 Order (Doc. 11).

**I. Nature of the Matter before the Court**

    **A. Amended Complaint**

Plaintiff alleges in his Amended Complaint (Doc. 9) that he has been subjected to unconstitutional conditions of confinement in violation of the Eighth Amendment as a result of poor air quality. Plaintiff states that he was held in long term segregation ("LTS") at HCF for

1

approximately three years. The entire time he was in LTS, he was confined in a cell with a solid sliding door for at least 23 hours a day. According to Plaintiff, "A" Cellhouse, where the LTS cells are located, does not have an HVAC-style ventilation system. Instead, there is a pipe chase behind the cells where the plumbing and electrical wiring for the cells can be accessed. Vents in the cells open directly into the pipe chase. During the day, an exhaust fan pulls air out of the cells and into the pipe chase. At night, the fan is reversed, and unfiltered air is blown into the cells.

Plaintiff alleges that the pipe chase has not been cleaned in at least the three years he has spent in LTS, and it is filled with dust, mold, remnants of sewage from repeated plumbing malfunctions, mouse and bird droppings, and dead mice and birds. He points out that facility staff are aware of these conditions because they must enter the pipe chase to manually flush the toilets of the MRA cells. Moreover, Plaintiff filed several grievances, which he attached to his Amended Complaint along with the responses he received.

Plaintiff asserts that since being housed in A Cellhouse, he experienced respiratory problems that have progressively worsened. At the time he filed his Amended Complaint, Plaintiff claimed that he suffered from daily asthma attacks and required an albuterol inhaler to help him breathe. Plaintiff states that he had no breathing problems before being housed in A Cellhouse.

### B. *Martinez* Report

The *Martinez* Report provides that Plaintiff is 42 years old and has a history of smoking and self-reported upper respiratory infections. Plaintiff was held at HCF from September 26, 2018, until April 4, 2022, when he was transferred to the El Dorado Correctional Facility. The Report confirms that Plaintiff resided in A Cellhouse for three years, as alleged by Plaintiff. The Report states that each of the cells Plaintiff lived in had a solid door with two five-inch vent holes at the back of the cell, one near the top of the wall and one near the bottom. The doors either had a square

at the bottom with louvers or a grilled window with a glass covering that could be propped open.

The Report describes Defendant Steve Hullet as the physical plant supervisor specialist at HCF. His job includes overseeing the operation and maintenance of the ventilation system of A cellhouse. Hullet states that the design of the system cannot permit the air in the pipe chase to enter any of the cells in which Plaintiff lived. Six large fans in the ceiling at the top of A cellhouse draw the air up and out through roof vents. The fans cannot run backwards and can only draw air upward. The Report provides that A cellhouse was constructed in the late 1800s. Only five of the six fans run at a time, with one kept in reserve. The fans are operated and monitored by the building control system. The system notifies Hullet and his staff of any problems. The system works to replace all of the air in each cell three times per hour, unless an inmate blocks the vents.

The Report further provides that the pipe chase, or center way, is five feet wide and extends to the ceiling about fifty feet up. Catwalks on each of four levels allow access to the center way, and staff make multiple entries into the center way each shift. Hullet states that there are periodic small leaks in the center way but not raw sewage. He further asserts that there is no bad odor or rodent problem. He claims that Plaintiff's allegations about the flow of air are not factually correct, and it is physically impossible for contaminants to be pulled into the cells from the center way.

The Report states that Defendant Joyce Hicks is the Infection Control Nurse at HCF. Her duties include administering immunizations, assisting with testing for infectious diseases, and monitoring outbreaks of infections.

The Report provides that Plaintiff was seen by Elisabeth Ostrom, LPN, on November 20, 2021. He reported experiencing breathing problems and alleged it was a result of dirty, unfiltered air blowing into his cell. He said that his upper respiratory issues started on or around November 8, 2021. Plaintiff's lung sounds were clear, and Ostrom referred him for an inhaler.

On November 22, 2021, Plaintiff was evaluated by Nurse Practitioner Nancy Ciskey. Auscultation of his lungs was normal, and he exhibited normal respiratory effort. He reported that the cell vent blowing air at night resulted in him inhaling dust or other particles that cause him breathing difficulty and a bad taste in his mouth, but he denied wheezing, cough, or shortness of breath. Ciskey diagnosed reactive airway dysfunction syndrome and prescribed an albuterol sulfate inhaler.

On February 1, 2022, Plaintiff was seen by Faye Vargas, RN, and requested that his inhaler be renewed. He complained of nasal redness, congestion, drainage, shortness of breath, sore throat, and non-productive cough. Vargas found his lungs sounded clear and referred him to his practitioner.

On February 28, 2022, Plaintiff again saw NP Ciskey. She noted that he did not exhibit shortness of breath, cough, hemoptysis (coughing up blood), or cyanosis (blue discoloration of the skin as a result of inadequate oxygenation or circulation). Auscultation of Plaintiff's lungs was normal, and he exhibited normal respiratory effort. She ordered spirometry and a chest x-ray. Ciskey also renewed the inhaler prescription.

Plaintiff underwent a spirometry test on March 1, 2022, and the results were normal. He had a chest x-ray on March 28, 2022, and the radiologist found no infiltrates or masses.

On March 28, 2022, Plaintiff again saw NP Ciskey. He reiterated his previous complaints about the air and reported that usage of the inhaler resolved his symptoms.

### C. Plaintiff's Response to the *Martinez* Report

Plaintiff disputes the allegations in the Report and maintains his allegations as set forth in his Amended Complaint. Specifically, he disputes that the windows on the quiet cell doors were ever propped open. He reasserts that "air from the center way would blow through the vent holes

4

into [his] cell every night." Doc. 22, at 4. Plaintiff alleges that, contrary to Hullet's assertions, security staff set and remove mouse traps from the center way and see animal feces and have stated as much to Plaintiff. *Id*. Moreover, he has personally witnessed security staff removing mouse traps containing dead mice. *Id*. Plaintiff disputes Hullet's statement that there is no bad odor in the center way, stating the air that blew into Plaintiff's cell from the center way always smelled bad and often smelled like feces. *Id*. at 5.

To refute the Report and the attached affidavits, Plaintiff submitted signed statements from nine other inmates housed in A Cellhouse at HCF and one inmate who entered the center way to do repair work. The statements allege that the vents in the cells lead directly to the pipe chase or center way, the center way is dirty and wet, the air entering the cells is unfiltered, the vents are not cleaned, and there are mice in the cellhouse. One prisoner alleges that he wakes up with matted eyes (Doc. 22-10, at 1), and another alleges that his pre-existing asthma is worse since being housed in A Cellhouse (Doc. 22-8, at 1).

## II. Discussion

The *Martinez* Report "is treated like an affidavit, and the court is not authorized to accept the factual findings of the prison investigation when the plaintiff has presented conflicting evidence." *Hall v. Bellmon*, 935 F.2d 1106, 1111 (10th Cir. 1991) (citing *Sampley v. Ruettgers*, 704 F.2d 491, 493 n. 3 (10th Cir. 1983)). While Plaintiff disputes the Report's findings about the state of the center way, the smell of the air, and the flow of air, the Court finds that even accepting Plaintiff's allegations as true, he has not stated an actionable claim for relief under the Eighth Amendment.

To state a claim for violation of the Eighth Amendment due to a condition of confinement, a plaintiff must show that the defendants acted with deliberate indifference to a substantial risk of

serious harm. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). Therefore, "[f]irst, the deprivation alleged must be, objectively, 'sufficiently serious.'" *Id*. To satisfy the objective component, a prisoner must allege facts showing he or she is "incarcerated under conditions posing a substantial risk of serious harm." *Id.*; *Martinez v. Garden*, 430 F.3d 1302, 1304 (10th Cir. 2005). The conditions Plaintiff alleges must be more than uncomfortable or disagreeable. *Despain v. Uphoff*, 264 F.3d 965, 973 (10th Cir. 2001). Here, Plaintiff alleges that the pipe chase is dirty, that the air smells bad, that there are no filters, and that there is dust in the air. He speculates that there is mold in the air, and he alleges that he had breathing problems at night when air entered his cell from the vents. He states that he received medical care and does not dispute that the prescribed inhaler was effective. He also does not dispute that there are no objective findings of lung damage and does not allege that he continues to suffer breathing issues since being moved to EDCF.

To state an Eighth Amendment claim based on exposure to a hazardous substance, a prisoner must show that his level of exposure had an attendant risk of serious harm and that, at the time of his exposure, involuntarily subjecting a person to that risk was intolerable. *Durham v. Hood*, 412 F. App'x 127, 130 (10th Cir. 2011) (unpublished). The Court does not think that Plaintiff's allegations pass that threshold. The conditions, even if Plaintiff's allegations are accepted as true, are not ideal, but there is nothing more than Plaintiff's conclusory claim that they could or did cause serious harm. Only extreme deprivations are adequate to satisfy the objective component of an Eighth Amendment claim regarding conditions of confinement. *See Hudson v. McMillian,* 503 U.S. 1, 9 (1992).

There are cases where courts have found that allegations of poor air quality state a claim for a constitutional violation. However, those cases typically involve exposure to second-hand cigarette smoke, chemical fumes, asbestos, or other known carcinogens. *See Templeton v.*

6

*Anderson,* 607 F. App'x 784, 787 (10th Cir. 2015) (unpublished) (finding exposure to airborne particles of asbestos, a known human lung carcinogen, poses a risk of serious harm to future health where "the intensity and duration of the exposure [are] both ... significant"); *Blay v. Reilly*, 241 F. App'x 520, 523–24 (10th Cir. 2007) (reversing grant of summary judgment to defendant on Eighth Amendment claim where plaintiff alleged repeated exposure to high concentrations of chemical fumes and particulates in workshop at prison); *Henderson v. Sheahan,* 196 F.3d 839, 846 (7th Cir. 1999) (holding that an inmate failed to state a claim under the Eighth Amendment since his complaints of breathing problems, chest pains, dizziness, sinus problems, headaches, and fatigue were "objectively speaking, relatively minor"); *Oliver v. Deen,* 77 F.3d 156 (7th Cir. 1996) (holding that an inmate failed to demonstrate a serious medical need for purposes of the Eighth Amendment where the inmate alleged that exposure to environmental tobacco smoke was causing wheezing, shortness of breath, dizziness, and nausea); *Lopez v. Robinson,* 914 F.2d 486, 491 (4th Cir. 1990) (holding that there was insufficient evidence of a serious medical need where an inmate alleged that he was suffering mental stress as a result of being in a cell with inadequate ventilation and that the lack of ventilation was causing headaches and increased sinus problems).

> Poisoning the prison water supply or deliberately inducing cancer in a prisoner would be forms of cruel and unusual punishment, and might be even if the harm was probabilistic or future rather than certain and immediate. But failing to provide a maximally safe environment, one completely free from pollution or safety hazards, is not. Many Americans live under conditions of exposure to various contaminants. The Eighth Amendment does not require prisons to provide prisoners with more salubrious air, healthier food, or cleaner water than are enjoyed by substantial numbers of free Americans.

*Carroll v. DeTella,* 255 F.3d 470, 472 (7th Cir. 2001) (internal citations omitted).

The Court finds that the risk Plaintiff complains of is not so grave that it "violates contemporary standards of decency to expose anyone unwillingly to such a risk." *Helling v. McKinney*, 509 U.S. 25, 36 (1993). Again, accepting Plaintiff's allegations as true, the air quality

7

in A Cellhouse at HCF is not ideal, but the Court cannot find that it rises to the level of cruel and unusual punishment.

### III.  Conclusion

The Court finds for the reasons explained above that Plaintiff fails to state a claim for violation of his rights under the Eighth Amendment due to the conditions of his confinement at HCF.

**IT IS THEREFORE ORDERED** that this case is dismissed for failure to state a claim on which relief may be granted.


**IT IS SO ORDERED**.

**Dated October 3, 2022, in Topeka, Kansas.**

s/ Sam A. Crow
**SAM A. CROW**
**U. S. Senior District Judge**
